Gontracts; default; waiver of delivery- schedule; contractor's obligation re performance; reprocurement costs.— Plaintiff seeks review under Wunderlich Act standards of the decision of the Armed Services Board of Contract Appeals (73-1 BCA para. 9973), holding proper the termination for default of plaintiff’s contract for failure to deliver incendiary liners, the contract items, in accordance with the contract’s delivery schedule. Plaintiff also challenges the Board’s determination that it is liable to defendant for failure to replace certain incendiary liners delivered to defendant for which it had been paid but which were thereafter returned to plaintiff as defective. On May.28,1976 the court entered the following order:
Before Davis, Judge, Presiding, Laramore, Senior Judge, and SheltoN, Judge.
“This case comes before the court on plaintiff’s request for review of the recommended decision of Trial Judge Thomas J. Lydon, filed August 25, 1975 [reported in full text at 21 CCF para. 84198], on the parties’ cross-motions for summary *686 judgment in this Wunderlich Act case. Oral argument has been had and the briefs have been considered.
“The court agrees with the Trial Judge’s conclusion and with most of his opinion (copies of which have been furnished to the parties) but finds it unnecessary to pass on certain of the issues considered by him in his opinion. For the court the critical point is that, even assuming that plaintiff may not have been able to anticipate the presence of lead in the misch metal, it still did not do what it could and should have done to forward-performance during the period from early September 1971 (when the existence of lead was first ascertained) until the default termination. See particularly the Trial Judge’s discussion in Part III of his opinion under the heading ‘Waiver of the Delivery Schedule.’ Lead is an impurity and plaintiff assumed the obligation to provide liners of misch metal with a specified maximum percentage of impurities. This obligation required it to do what it could, after the presence of lead was discovered, to bring down the lead percentage within acceptable limits. If there was a ‘no lead at all’ directive in September, plaintiff had no reason to consider that it was permanent or anything but a temporary expedient. AMMET, plaintiff’s supplier, was able, by the end of September, to control the lead content of its material to under 0.5 percent (within the limit set by the specifications), but plaintiff had by then disabled itself from performing and made no real effort to do so. Consequently, it could not itself manufacture misch metal liners with impurities of no more than 0.5 percent, and sought to subcontract to another producer (at the expense of that other producer’s own obligations). On this view it is unnecessary to consider whether plaintiff should or should not have anticipated the presence of lead in the misch metal, and accordingly the court, by-passing the issue, does not adopt pp. 43-53 (first half) of the Trial Judge’s opinion.
“To clarify the issue which remains for decision by the ASBCA the court points out that under the Government’s claim (see Part IV of the Trial Judge’s opinion) the defendant is entitled to a reffund of the money paid to plaintiff for the 16,550 defective liners never replaced and 'also to the excess reprocurement costs, if any, incurred by the defendant *687 in replacing those particular liners. No other reprocurement costs are involved or are to be awarded.
- “it is thereROee CONCLUDED and ordered that defendant’s cross-motion for summary judgment is granted and plaintiff’s motion for summary judgment is denied. Further proceedings 'are stayed pursuant to Bule 149 for a period of 3 months to afford the parties an opportunity to obtain an administrative determination of the amount of plaintiff’s liability to defendant, a matter that was suspended in ASBCA No. 18708 pending the decision herein and which should now be immediately reinstated. The attorney of record for defendant is assigned the responsibility to advise the court, by letter to the Trial Judge (with copy to opposing counsel) of the status of proceedings on remand, such advice to be given initially 3 months, or less if the matter is resolved or determined, from the date hereof, and every 60 days thereafter. The attention of counsel and the Board is also directed to Buie 150.”
Plaintiff’s motion for rehearing was denied June 25,1976.